THEODORE ROYER, S. T. J. COLEMAN, AND JOHN YOUNG, Partners as ROYER, COLEMAN & Co., Plaintiffs in Error, v. MARY AYDELOTTE, Defendant in Error.

The members of a firm are jointly liable for the fraud and misrepresentations of one partner made in the course of the partnership business, though without the knowledge of the other partners.

ERROR TO SPECIAL TERM.—The facts are stated in the opinion of the court.

*Collins & Herron*, for plaintiffs in error.

*Jordan & Jordan* and *N. C. McLean*, contra.

STORER, J. The defendants seek to reverse a judgment rendered against them, in the plaintiff's favor, at Special Term.

The petition stated that the plaintiff was the owner of and had the possession of a government voucher, given to Peacock & Son for work performed by them for the United States. This represented $1,441.40, and was delivered to the plaintiff to discharge a liability owing to her by the original holder. She was fraudulently induced to part with the possession thereof, temporarily, at the suggestion and by the persuasion of her son, who was prompted to do so by Coleman, one of the defendants, who afterward obtained the money due thereon from the proper officer, and appropriated, as the plaintiff charges, the whole amount to the use of the defendants.

An answer was filed denying all fraud, admitting the receipt of the voucher, the payment of the money, and the appropriation of the sum of $1,000 to a debt due the defendants from Peacock & Co.

The plaintiff replied, traversing in general terms the defendant's answer.

On the trial in Special Term, the case was submitted to a jury, who rendered a verdict for the plaintiff for the whole amount of her claim.

A motion was made for a new trial, which the court overruled, and the plaintiff now assigns for error:

1. That improper testimony was admitted.

2. That there was error in the charge to the jury.

3. That there was error in overruling the defendant's motion for a new trial.

The testimony, though somewhat conflicting, very clearly established the ownership of the voucher by the plaintiff; that it was obtained from her by her son, through the advice and upon the suggestion of Coleman, who appears to

have studied carefully how he might accomplish his purpose, no matter what misrepresentation was required to effect his object. He had no claim to the voucher, either equitable or legal; nor does he seem to have known of its existence until informed of the fact by the plaintiff's son; when, by artifice and a suppression of the truth, as well as false assertions on the part of Coleman, the plaintiff was induced to give up the instrument to be retained merely until the return to Cincinnati of one of the firm of Peacock & Co., then doing business at the South.

We do not perceive that there is any error in the rulings of the judge in the admission or rejection of testimony, or in his charge to the jury; nor do we find that the weight of the evidence does not sustain the plaintiff's claim. If there was conflict in the testimony, it is not our function to reconcile it; and, even if it were, we should have but little difficulty in arriving at the same conclusion with the jury.

The only doubt we have had is, whether the very reprehensible conduct of Coleman has made the other defendants liable for the entire sum represented by the voucher, or only for so much as the copartners actually received.

It appears that after the defendant's claim against Peacock & Co. had been paid, the balance of the sum received by Coleman was given, through the intervention of the plaintiff's son, not to his mother, but to Peacock, who was then and still is insolvent, thus depriving the real owner of the entire amount represented by the voucher. ·

While it may be a hard case for the other defendants, who did not participate in Coleman's conduct, in the mode in which he obtained the voucher, we are satisfied the law of the case imposes a joint liability upon all the partners for the acts of the individual members.

We find the rule thus stated by Judge Story: "The principle extends further, so as to bind the firm for the frauds committed by one partner in the course of the transactions and business of the partnership, even when

the other parties had not the slightest connection with, knowledge of, or participation in the fraud. And so if representations of certain facts as existing are fraudulently made by one partner, unknown to the others in the partnership business, and the facts never existed, but the whole statement is a mere fiction, the firm will be bound to the same extent as if it were true and the facts existed." Story on Partnership, sec. 108, and cases cited thereunder.

This principle necessarily follows from the relation which partners sustain to each other, and attaches to the connection they have formed. They thus declare to the world that they are satisfied with the good faith and integrity of each other, and impliedly undertake to be responsible for what they shall respectively do within the scope of the partnership concerns. Gow on Partnership, 55, 146; Watson on Partnership, chap. 4, p. 175.

We must leave the defendants, who are made to suffer, to their remedy against Coleman, who is unquestionably liable to them for any loss they have sustained.

The judgment at Special Term will be affirmed.